Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except as modified herein. The Full Commission AFFIRMS and ADOPTS the Opinion and Award of the deputy commissioner, except as modified as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties at all relevant times.
2. The defendant-employer was a duly qualified self-insured at all relevant times.
3. The issues for determination are:
 a. Did plaintiff sustain a compensable injury on or about December 20, 1990 and/or February 13, 1991?
 b. If plaintiff sustained a compensable injury (or injuries), did such injury contribute to plaintiff's disability?
c. What was the period of plaintiff's disability?
4. At the hearing, the following documents were received:
 a. Plaintiff's Exhibit 1 — 15 pages of medical records of Dr. Jennifer McMillian;
 b. Plaintiff's Exhibit 2 — 45 pages of medical records from the plant nurse; and
 c. Defendant's Exhibit 1 — 1 page record of meeting with plaintiff on January 10, 1991.
5. The plaintiff's average weekly wage was $565.00, which yields a compensation rate of $376.69.
***********
The Full Commission adopts in part and modifies in part the findings of fact by the deputy commissioner and finds as follows
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a high school graduate who was 56 years of age with a history of coronary artery disease, hypertension, and hypercholesterolemia. The plaintiff underwent cardiac bypass surgery in 1981.
2. The plaintiff began working with defendant-employer in 1981. In late 1990, plaintiff's job as a conte-fill operator was cut back, and plaintiff was placed in a utility job. As a utility worker, plaintiff was required to remove a spool which weighed approximately 40 pounds from a mechanism. This had to be done approximately 6 times per shift.
3. Prior to December 20, 1990, at approximately 11:00 a.m., plaintiff had not changed a spool. At that time, he used an electric hoist to grab a reel of wire to set it on the bottom of a spool. As the plaintiff attempted to lift the top of the reel from a squatting position, he experienced a sharp pain between his shoulder blades and a shocking sensation down his legs. The plaintiff finished this task and then went to lunch in the work area. When he started to get up, plaintiff again felt pain in his shoulder blades.
4. The plaintiff verbally reported the incident to his foreman, Jim Scroggins, who gave the plaintiff a medical pass to the nurse's station. At 12:10 p.m., the plaintiff was seen by the plant nurse, Adeline Wall. The plaintiff returned to work in the afternoon and continued to work. During the Christmas holiday, the plant was shut down after the 21st of December until the first of January.
5. On December 31, 1990, the plaintiff went to his family doctor, Dr. Jennifer McMillian, at which time he complained of mid-back pain, pain behind the knees and numbness in both feet. Due to plaintiff's family history, Dr. McMillian ordered diabetes screening.
6. The plaintiff returned to work when the plant-reopened in January of 1991. On January 10, 1991, plaintiff disqualified himself from the utility job. The plaintiff was assigned to the power-scrubber/sweeper job. This required plaintiff to use a push broom and to operate the power scrubber, which is ridden like a golf cart.
7. On February 13, 1991, plaintiff was in training for the power scrubber job when he squatted down to lift debris from the floor with a makeshift cardboard dust pan. At that time, the plaintiff experienced pain in his back and legs similar to that experienced in December of 1990.
8. On February 14, 1991, the plaintiff reported his injury to the plant nurse and was authorized to go to the doctor.
9. On February 15, 1991, the plaintiff was referred to Dr. C. Scott McLanahan for an evaluation. A subsequent work-up by Dr. Frederick Finger, of Charlotte Neurosurgical Associates, disclosed an old calcified disk herniation at T8-9. Dr. Finger performed a transpedicular disk removal with laminectomy at T8-9 on February 20, 1991.
10. Dr. Finger opined that it would be difficult to state that the disk herniation was caused by plaintiff's work related injuries of December, 1990 and February, 1991, but in his opinion, these injuries did aggravate or accelerate plaintiff's pre-existing disk condition causing it to become symptomatic.
11. The plaintiff was last seen by Dr. Finger on February 25, 1992, at which time he was referred for a work capacity evaluation. No evidence was introduced as to a final visit and release from treatment by Dr. Finger nor was there evidence of a permanent partial disability rating assignment.
12. The plaintiff underwent a functional capacity evaluation on March 23 and 24, 1992 at Rehab Advantage, at which time he was found capable of working with a 15 pound weight restriction. Also, at that time, rehabilitation staff approved the power scrubber job as being within plaintiff's restrictions.
13. The plaintiff did not return to the power scrubber job.
14. The plaintiff received 52 weeks of disability benefits under a company sponsored plan beginning after February 14, 1991, at the rate of $220.00 per week.
15. The plaintiff filed his workers' compensation claims on March 12, 1992.
16. Although plaintiff's disk herniation was not caused by the work-related incidents, the record clearly establishes that prior to his December, 1990 and February 13, 1991 injuries by accident or specific traumatic event, the plaintiff was employed and earning wages and was not rendered disabled from work due to disk problems. Plaintiff has not returned to work since February 14, 1991.
17. The defendants failed to file a Form 19 Employer's Report of Injury to Employee in the case of both the December 20, 1990 incident and the February 13, 1991 incident even though plaintiff reported these injuries to the plant nurse.
***********
The foregoing stipulations and findings of fact engender the following additional
CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of the employment which was a direct result of a specific traumatic incident on both December 20, 1990 and February 13, 1991. N.C. GEN. STAT. § 97-2(6).
2. As a result of the compensable incidents and resulting disability, plaintiff's asymptomatic pre-existing calcified T8-9 disk was aggravated, such that he was rendered disabled from work on February 14, 1991. When a pre-existing, non-disabling, non-job-related condition is aggravated or accelerated by an accidental injury, such that disability results, then the employer must compensate the employee for the entire resulting disability, even though it would not have disabled a normal person to that extent. Wilder v. Barbour Boat Works, 84 N.C. App. 188,352 S.E.2d 690 (1987).
3. As a result of the compensable injuries, plaintiff is entitled to temporary total disability compensation at the rate of $376.69 per week from February 14, 1991, up to the date of the hearing and continuing until he returns to work or until further Order of the Industrial Commission, subject to a credit for the disability benefits received under the employer-sponsored plan. N.C. GEN. STAT. § 97-29 and -42.
4. As a result of the compensable injuries, plaintiff is entitled to compensation for medical and vocational treatment incurred or to be incurred.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to counsel fees, defendants shall pay temporary total disability compensation to the plaintiff at the rate of $376.69 per week from February 14, 1991, through the date of hearing and continuing until plaintiff returns to work or until further Order of the Industrial Commission. Amounts which have accrued shall be paid in a lump sum, uncommuted. Defendants shall receive a credit in the amount of $11,741.89 for disability benefits paid to plaintiff under the employer-sponsored plan.
2. A reasonable attorney's fee of 25% of the accrued compensation due plaintiff herein is hereby approved for plaintiff's counsel and thereafter, plaintiff's counsel shall receive every fourth check. Said attorney's fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel.
3. Defendants shall pay for medical expenses incurred or to be incurred as a result of the aggravation of the pre-existing T8-9 disk.
4. Defendants shall pay the costs due this Commission.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________________ LAURA K. MAVRETIC COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER
BSB:md